**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 27, 2015
Decided February 5, 2015

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 14-1964

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 12 CR 440-1 |
| LOZARO CORRAL, *Defendant-Appellant*. | Virginia M. Kendall, *Judge*. |

**O R D E R**

Lozaro Corral was prosecuted in federal court after selling several guns to an informant. He pled guilty to two counts of possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). At sentencing, Corral's lawyer argued for a below-guideline prison sentence based on extraordinary family circumstances and a criminal history score that overrepresented the seriousness of Corral's prior convictions. The district court rejected these contentions and sentenced Corral to two consecutive terms of 70 months each, for a total sentence of 140 months in prison, which was within the sentencing guideline range determined by the district court. Corral has appealed. We affirm his sentence.

After Corral pled guilty, a probation officer calculated a total offense level of 29 and criminal history category of IV, yielding a guideline imprisonment range of 121 to 151 months. Corral's criminal history includes an Illinois conviction for second-degree murder, as well as convictions for domestic battery, possession of cannabis, and contributing to the delinquency of a minor. He committed the federal gun crimes while on court supervision for the domestic battery. The probation officer noted that Corral had been caring for his son, then six years old, and for his father, who was in poor health. Corral had informed the probation officer, however, that he and the boy's mother also had a two-year-old daughter and that soon the woman and both children would be sharing a house with his father.

Through his counsel in a written submission and again at the sentencing hearing, Corral argued for a prison term below the guideline range. He first asserted that his criminal history score was exaggerated by the points assessed on his convictions for possession of cannabis and delinquency of a minor (characterized as a drinking offense). Corral also asserted that his "minor" domestic battery had significantly increased his criminal history score because two additional points were added for committing the gun crimes while on supervision for that offense. Corral tried to minimize the second-degree murder conviction by explaining that he had not himself killed the victim but was only involved in a fight during which someone else's gun accidentally discharged and killed the victim.

Corral also asserted that he was the sole caretaker of his father and son, who both lived with him. Corral's father had suffered a heart attack two years earlier, he said, and also had seizures, diabetes, and difficulty administering his insulin shots. Corral submitted a letter from his father's doctor stating that the father was on insulin, had diabetes, high blood pressure, and high cholesterol, and did not take his medications as prescribed. Corral did not contradict (or even acknowledge) his statement to the probation officer that his father and son were "in the process of relocating" to a home with the boy's mother and sister. Corral also did not mention any of this during his brief allocution, and he did not testify at the sentencing hearing.

The district court adopted the probation officer's proposed findings and rejected as grounds for mitigation Corral's contentions about his criminal history score and caretaking responsibilities. The court noted that Corral's criminal history had started at a young age and escalated, showing that he has trouble with authority. The court found that Corral's father's health conditions were not severe and that his son could live with the boy's mother. The court also discussed how crimes like Corral's fueled increasing

gun violence in Chicago and reasoned that a guideline-range sentence was needed to deter other young men from committing similar gun crimes. The judge concluded that a sentence of 140 months was appropriate.

On appeal, Corral challenges his sentence. His arguments are a little confused, but the basic dissatisfaction with the sentence is clear. Corral contends that the district court "miscalculated" the guideline range "by not granting the request for a downward departure" premised on Corral's family circumstances and the overrepresentation of his criminal history. This argument confuses the operation of the sentencing guidelines both before and after the Supreme Court held in *United States v. Booker*, 543 U.S. 220 (2005), that the sentencing guidelines must be treated as advisory rather than binding.

Before *Booker* a sentencing court could grant an upward or downward departure and impose a prison sentence above or below the calculated guideline range. But a departure within the overall framework of the guidelines did not alter the guideline range itself. See, e.g., *United States v. Ortega-Galvan*, 682 F.3d 558, 561–62 (7th Cir. 2012); *United States v. Guyton*, 636 F.3d 316, 319–20 (7th Cir. 2011). That was true even though sentencing judges sometimes spoke of adding or subtracting offense levels or criminal history points in crafting a hypothetical "departure range" to guide the degree of a departure from a calculated range. See *United States v. Johnson*, 427 F.3d 423, 425 (7th Cir. 2005); *United States v. Leahy*, 169 F.3d 433, 445 (7th Cir. 1999); *United States v. Sarna*, 28 F.3d 657, 658-60, 663 (7th Cir. 1994).

After *Booker* the concept of "departures" has been supplemented by aggravating and mitigating factors that, in applying the sentencing factors in 18 U.S.C. § 3553(a), may lead to a variance from the guideline range regardless of whether the case fits the criteria for a departure within the framework of the guidelines. See U.S.S.G. § 1B1.1 (method for applying guidelines after *Booker*); *United States v. Brown*, 732 F.3d 781, 786 (7th Cir. 2013); *United States v. Lucas*, 670 F.3d 784, 791 (7th Cir. 2012). Yet post-*Booker* variances, like pre-*Booker* departures, leave the guideline range itself unchanged. See *United States v. Munoz*, 610 F.3d 989, 994–95 (7th Cir. 2010); *United States v. Miranda*, 505 F.3d 785, 791 (7th Cir. 2007); *United States v. Simmons*, 485 F.3d 951, 954–55 (7th Cir. 2007). In other words, the score remains the score even if a sentencing judge concludes that an aggravating or mitigating circumstance warrants a sentence outside the actual guideline range.

Corral has not identified, either in the district court or this court, an arguable error in the calculation of the guideline range. His appellate claim is thus not really about the

calculation of the guideline range. Nor does he contend that the district court failed to consider his arguments in mitigation. Corral therefore has not identified any procedural error in his sentencing. His arguments on appeal amount to a disagreement with the district court's weighing of the § 3553(a) factors, which is an issue of substantive reasonableness.

To rebut the presumption that his within-guideline sentence is reasonable, Corral must show that the district court's reasoning was not consistent with the § 3553(a) factors. See *Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Banks*, 764 F.3d 686, 690 (7th Cir. 2014); *United States v. Williams*, 436 F.3d 767, 768–69 (7th Cir. 2006). Here, the court weighed the § 3553(a) factors, including Corral's family circumstances, his criminal history, and the seriousness of the firearms crimes. The court explained that Corral's circumstances did not warrant a lighter sentence, especially when weighed against his violent history and the effect of gun crimes on communities. Weighing aggravating and mitigating factors is the heart of the district judge's heavy responsibility in deciding criminal sentences. The record here shows that Judge Kendall gave this case thoughtful consideration, calculated the guideline range correctly, weighed the appropriate factors, and reached a reasonable conclusion. Accordingly, the sentence imposed on defendant Corral is

AFFIRMED.